IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Brian Bailey, | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-21 Erie |
| | ) | District Judge McLaughlin |
| Michael J. Astrue, | ) | Magistrate Judge Baxter |
|       Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is recommended that Bailey's Motion for Summary Judgment [Document 10] be granted. It is further recommended that the Motion for Summary Judgment filed by the Commissioner [Document 12] be denied. This matter should be remanded to the Social Security Administration for further proceedings.

**II.    REPORT**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Brian Bailey (hereinafter, "Bailey") seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying him benefits.

Both Plaintiff Bailey and the Commissioner have filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The matter is now ripe for review and disposition.

**A.     Procedural Background**

Bailey applied for Disability Insurance Benefits (DIB) and Supplemental Social Security

1

income on August 29, 2003 and then again on November 4, 2004. R. 52-57[1]. His application was denied, and he requested a hearing before an administrative law judge. A hearing was subsequently conducted before ALJ Lamar W. Davis[2] on June 21, 2006, at which Bailey was represented by counsel. The ALJ denied Bailey's application in a decision dated October 25, 2006. Bailey requested review of the hearing decision by the Appeals Council. The Commissioner's decision became final when the Appeals Council denied Bailey's request for review on December 15, 2006. R. 5-7. Plaintiff Bailey then commenced this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the ALJ's decision.

### B. Factual Background

Bailey was born on November 11, 1974. R.25. At the time of the most recent ALJ hearing, Bailey was thirty years of age.[3] R.32. He was married with 3 children. R-52-53. He has a high school education and little college experience. R. 26.

Bailey has past relevant work experience as a private security officer, grocery store worker, bus driver, vendor, landscaper, and scrap yard worker. R. 17. Bailey complains that he

---

1 The Court's recitation of relevant facts is derived from the transcript of the administrative record filed by the Commissioner as part of her answer in accordance with §205(g) of the Act, 42 U.S.C. § 405(g), which is referred to hereinafter as "R". Additional citations will appear as necessary.

2 ALJ Lamar Davis is named as the judge sending notice for the hearing and rendering the decision. However, ALJ Manny Smith is listed presiding over the hearing in the oral transcript. The Commissioner has filed an affidavit verifying that in fact ALJ Davis presided over the hearing. See Document 17.

3 At this age the plaintiff is classified as a "younger person," and pursuant to the agency's regulations, age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. § 404.1563(c); 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(h)(3-4). Although age is generally a chronological determination, the agency's regulations provide that age will not be applied "mechanically in a borderline situation." 20 C.F.R. § 404.1563(b). When an individual is within a few months of reaching age fifty (50), for example, he or she should be given the benefit of a "borderline" age determination under 20 C.F.R. § 404.1563(b) as an individual closely approaching advanced age. Jolly v. Barnhart, 465 F.Supp.2d 498, 505 (2006).

has been unable to work since June 29, 2003, as a result of complications from a mental illness, bipolar disorder, allegedly causing "snappy mood swings ... and violent thoughts". R.71. Bailey's most recent termination came in March of 2004 after his attempted attack of a 3rd grader while working as a substitute bus driver. R. 150.

### C. Medical Background

Bailey was referred to Saint Vincent Health Center for specialized mental health treatment by his family practitioner, Dr. Peter Kroemer, on April 16, 2003. R. 184. The first staff psychiatrist to treat and diagnose Bailey was Dr. Asha Deshpande. His initial appointment, on April 29, 2003, resulted in a diagnosis of bipolar disorder for which he was medicated. R. 183. Bailey had been treated for depression and anxiety his family practitioner. Id. Dr. Deshpande took over treatment for all of Bailey's mental health issues and prescribed accordingly. Id. Dr. Deshpande continued treatment during 8 sessions from April 29, 2003 until August 19, 2004. R. 310-320.

Bailey's care was then transferred to Dr. Fuat Ulus at Bailey's request, where Dr. Deshpande's diagnosis was corroborated, and treatment for bi-polar disorder and anxiety issues continued. R. 309, 274. Dr. Ulus continued to see Bailey for 6 appointments, roughly at 3 month intervals, changing his medications as needed. R. 298-309. Both Dr. Deshpande and Dr. Ulus had separately admonished Bailey for not taking his main bi-polar medication as required at different times. R. 300, 316.

As a result of his diagnosed bi-polar disorder, Dr. Ulus found Bailey's long- and short-term prognoses to be poor. He found that Bailey's mental illness decreased "the potential of dealing with stress he has in his daily life, in the work setting as well." R. 549. Dr. Ulus conveyed Bailey's inability to work in a doctor's note on November 08, 2005. R. 321. He reiterated this opinion in a letter to Bailey's attorney, dated April 25, 2006, holding the opinion that Bailey cannot "maintain substantial gainful employment". Id. at 549. Dr. Ulus wrote another letter in which he stated that it was his opinion that "[i]t is medically and psychiatrically necessary for the above mentioned individual [to be] placed on disability." R. 650.

3

Dr. Ulus also noted Bailey's need for alcohol treatment after previous alcohol-related issues. R. 302. Bailey agreed at different points to seek detox from alcohol use and to engage in out-patient counseling. R. 298, 503.

Bailey also saw a consultative psychologist, Raymond Francis, Ph.D. on January 18, 2005. Dr. Francis corroborated the previous findings of bi-polar disorder, intermittent explosive disorder, post-traumatic stress disorder, and found a history of alcohol dependence. R. 277. Dr. Francis noted explosiveness, depression, sadness, mania, paranoia, self-consciousness, intolerance of criticism, and misreading of the intentions of others "to be a reliable sample in his adjustment." R. 274, 276. As a result of his mental illness, Dr. Francis found that Bailey "requires a slower life pace and minimal activity" and that his "motivation is not too strong." R. 278. Dr. Francis believed that "he is not able to engage in normal commerce within the community on a sustained level" and that "[f]urther gains in his adjustment are not likely." Id. He found extreme impairment to interact appropriately with the public, and an extreme impairment in his ability to respond appropriately to work pressures in a usual work setting. Id. Francis found marked to extreme impairment in Bailey's ability to interact appropriately with his supervisors and co-workers, as evidenced by his "long history of aggressive acting out." Id. Dr. Francis believed that even without the alcohol and drug issues previously discussed, Bailey's mental illness would still operate and that he was unable to "manage benefits in his own interest" R. 280.

Dr. Roger Glover, a state psychologist, reviewed the record on October 10, 2003 and again on January 28, 2005. R. 207, 281. On the October 10, 2003 review, Dr. Glover found that the record showed "bipolar disorder with moderate anxiety." R. 224. However, Dr. Glover's findings showed Bailey only "moderately limited" in his "ability to complete a normal workday and workweek without interruptions" as a result of his mental illness. R. 223. He further held that Bailey's "ability to accept instructions and respond appropriately to criticism from supervisors" to be only "moderately limited". Id. Dr. Glover established a "mild" restriction in Bailey's "activities of daily living", finding no "episodes of decompensation". R. 217. These together amounted to a finding of only moderate functional limitation, leading Dr. Glover to

4

conclude that sufficient criteria were not met to confer disability to Bailey. R. 218.

In response to Bailey's application for benefits in 2004, Dr. Glover reviewed the expanded record (including more recent psychiatric evaluations) on January 28, 2005. R. 281. Along with the previously held affective disorder (bi-polar disorder), his examination of the record found personality and substance addiction disorders. R. 281. In total, Dr. Glover found that the "medical evidence establishes a medically determinable impairment of bipolar disorder, impulse control disorder, post traumatic stress disorder and alcohol abuse/dependence". R. 296. This examination recorded "one or two" episodes of decompensation for extended periods. R. 291. Also, Bailey's ability to "work in coordination with or proximity to others without being distracted by them was diminished from "not significantly limited" to "moderately limited". R. 294. Bailey's record showed increased impairment in other areas of his social interaction ability. R. 295.

Dr. Glover viewed Dr. Francis' assessment of Bailey's functional restrictions as "an overestimate." R. 296. Dr. Glover found Dr. Francis' opinion without substantial support from the other evidence of record, making it less persuasive. Id. In total, Dr. Glover's search of Bailey's record found that he was able to "meet the basic mental demands of competitive work" despite his limitations. Id.

### D. Vocational Expert's Testimony

During the hearing before the ALJ, Alina M. Kurtanich[4], MPA, MSRC testified as an impartial vocational expert. R. 51, 704-708. The ALJ asked Ms. Kurtanich a question that took into account a hypothetical individual of Bailey's age, education, training and work experience, who had no exertional limitations and who could perform simple, routine, repetitive tasks requiring no more than occasional independent judgment, not requiring occasional change in

---

4 There is a discrepancy between the vocational expert listed to testify by notice of the ALJ (Alina Kurtanich), whose resume is in the record, and the vocational expert named in the written transcript of the ALJ hearing (Dr. Monaco).

5

work, with a restriction on public interaction and interaction with co-workers and supervisors. R. 706. Ms. Kurtanich explained that although these requirements wouldn't comport with the demands of Bailey's previous work positions, there were new positions "in the national economy" that Bailey was capable of filling. Id. These included work as a surveillance system monitor, bench assembly worker, and an abrasive machine operator. However, Ms. Kurtanich did note that explosive responses "intermittently once per week would not allow for continued employment." Id.

### E.     The ALJ's decision

ALJ Davis issued a decision on October 25, 2006, finding that the record established that Bailey was not disabled. R. 10.  Specifically, the ALJ found that Bailey's bipolar disorder, intermittent explosive disorder, post traumatic stress disorder, and depression are "severe impairments" which had more than a minimal impact on his ability to engage in work-related activities. R. 15-16.   However, the ALJ subsequently determined that these impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation, No. 4.  In reaching this conclusion, the ALJ found that although the severe impairments could have caused Bailey's alleged symptoms, the ALJ found Bailey "not entirely credible" in his statements concerning those symptoms. R. 16. The ALJ found that his reported symptoms during a 2005 psychological evaluation weren't congruent with his mental status examination. Id.

ALJ Davis dismissed the findings of the consultative psychologist, Dr. Francis, regarding Bailey's inability to interact with the public, supervisors and coworkers, as being evidentially unsubstantiated in the record. Id. ALJ Davis reported Bailey's occupational hardships and treatment from 2003-2006. He discounted the opinion of Bailey's psychiatrist, Dr. Ulus', that Bailey was unable to work, because their "treatment relationship" was "not clear." Id.

The ALJ next concluded that, given Bailey's severe impairments, he was still able to perform simple, routine, low-stress work that did not involve significant interaction with co-

6

workers or members of the public. R.18. Because the vocational expert testified that Bailey could perform various jobs despite his impairments, the ALJ found that he was not disabled within the meaning of the Act. Id.

### F. Legal Standards
#### 1. Standard of Review

This Court's review is guided by [42 U.S.C. § 405(g)], which provides that "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, the court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir.1995). The question of whether the evidence is substantial enough to support a decision is both a question of quantity, and a requirement that the administrative decision must be "accompanied by a clear and satisfactory explication of the basis on which it rests." Diehl v. Barnhart, 357 F.Supp.2d 804, 808 (E.D.Pa. 2005) quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981), *reh'g denied*, 650 F.2d 481 (3d Cir. 1981); Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

#### 2. Standard for Determining Disability

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002) (both impairment and inability to work must last twelve months). Bailey's mental impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his

age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id.; 20 C.F.R. § 404.1520 (2006).

The Commissioner has established a now familiar five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §404.1520(a)(4). First, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity; if so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(a)(4)(I), (b); Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir.2004). Next, the Commissioner asks whether the claimant's impairment is "severe"; a negative answer results in the denial of benefits. 20 C.F.R. § 404.1520(a)(4)(ii), (c); Id. At step three, the Commissioner asks whether the claimant suffers from a listed impairment or its equivalent. If so, the claimant is entitled to benefits; if not, the Commissioner's inquiry proceeds to the next step. 20 C.F.R. § 404.1520(a)(4)(iii), (d); Id. Step four calls for the Commissioner to determine whether the claimant retains "residual functional capacity" to perform past relevant work; if so, the claimant is not entitled to benefits. 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f); Id. Finally, at step five, the Commissioner determines whether the claimant, in light of his or her age, education, and work experience, can transition to other available work. A positive answer will result in the denial of benefits. 20 C.F.R. § 404.1520(a)(4)(v), (g); Id. The claimant bears the burden of establishing steps one through four; at step five, the burden shifts to the Commissioner. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir.2007).

### G. Legal Discussion and Analysis

**1. The findings of the ALJ were not substantially supported by the medical evidence of record; ALJ Davis discounts the opinions of both the treating and consultative physicians, and does not substitute another medical opinion to explain his belief in Bailey's fitness for work.**

Plaintiff Bailey argues that the ALJ failed to adequately consider and explain his rejection of competent medical evidence supporting the claim. Bailey argues that the ALJ's

analysis of the relationship between Dr. Ulus and Bailey was incorrect as Ulus was Bailey's treating physician. Further, Bailey contends that there was no contradictory medical opinion for the ALJ to rely on. Therefore, Bailey argues that the ALJ did not give Dr. Ulus' medical opinion adequate weight in rendering the decision.

The reports of treating physicians should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician's opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record). An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. Davis v. Apfel, 149 F.Supp.2d 99, 108 (D. Del. 2001) quoting Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985). A physician's opinion is given controlling weight when that physician is a treating physician, whose opinion is well-supported by objective evidence, and consistent with other evidence of record. 20 C.F.R. § 404.1527; § 416.927 (2006). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. Davis, 149 F.Supp.2d 99, 108 (D. Del. 2001) quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

In this case, the ALJ discounts the opinion of Dr. Ulus. Dr. Ulus found Bailey incapable of working due to his bi-polar disorder. R. 321, 650. The ALJ does not afford Ulus' opinion treating physician weight, describing the relationship between Dr. Ulus and Bailey as "not clear." Id. The record indicates otherwise.

Bailey was seen as a regular patient by Saint Vincent health Center where he was treated by physicians over the course of three years at regular intervals, the most recent physician being Dr. Ulus. Bailey had continuous "scheduled appoints" with Dr. Ulus. The record reflects that Dr. Ulus saw Bailey 6 times up to the date of the hearing and continued the treatment first started by Dr. Ulus' colleague at St. Vincent Health Center, Dr. Deshpande. R. 298-309. Dr. Ulus refers to Bailey as being "under [his] care." R. 475. Dr. Ulus organized Bailey's treatment plan with chemical dependency treatment, changed his medications, and discussed his difficulties in adaptation and family life at length. R. 298, 306, 549. Dr. Ulus was Bailey's sole mental health provider from October 19, 2004 until 2006[5]. Given his treatment of Bailey's disorder every 3-months, this relationship seems well established, and the ALJ should have given Dr. Ulus' opinion adequate weight as a treating physician.

Further, if the ALJ is to discredit the assessment of Dr. Ulus, he must look to another credible medical opinion. The only other medical opinion of record offered by a physician who saw Bailey and spoke to his ability to work was Dr. Francis, the consultative psychologist. Dr. Francis largely corroborates the opinion of Bailey's inability to "respond appropriately to work pressures in a usual work setting." R. 279. Dr. Francis, after noting significant symptoms during the clinical examination, asserts that further gains in his adjustment are not likely. R. 278. If the ALJ is choosing to override the medical opinions of the treating and consultative physicians for Dr. Glover, a psychologist who did not see Bailey but reviewed the medical record, he must specifically include this in his opinion.

---

5  There is nothing in the medical record to suggest that the relationship between Dr. Ulus and Bailey has ended. The record merely ends chronologically with Dr. Ulus note dated 2006.

### 2. The ALJ does not explain his rejection of the medical record by summary statements of rejection; his explanation must include more than re-evaluating Bailey's physicians' credible statements deemed credible by his physicians.

Bailey argues that in fact Dr. Ulus' opinion is consistent with the medical evidence submitted. The ALJ may not summarily reject medical evidence; he must articulate his reasons for discounting it. Id.; Weir on Behalf of Wier v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). Where an ALJ chooses to reject the opinion of a treating physician, he must adequately explain in the record his reason for doing so. Sykes v. Apfel, 228 F.3d 259, 266 (3d Cir. 2000) ("Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence.").

In this case, the ALJ discounted Dr. Francis medical opinion that Bailey has extreme limitations in his ability to interact with others by finding that it was unsupported by evidence in the record. Evidence submitted supporting Dr. Francis' findings includes the medical opinion by Dr. Ulus, the severe outbursts, and Bailey's overall inability to deal with others in his personal and occupational life. R. 147-160. Bailey was terminated from his job as a bus driver after an outburst and attempted physical confrontation with a third-grade student. R. 150. Bailey was terminated from his U.S. Security Guard job 'due to behavior." R. 147. He lost his grocery clerk job due to his temper. Id. He was terminated from his position as plainclothes security for Giant Eagle after a temper outburst. R. 151. He was fired from his job providing security at a psychiatric hospital after losing his temper and threatening police, barely avoiding prosecution. R. 152. Effects of his bi-polar disorder contributed to his work difficulties as a fair security guard. R. 149. Bailey had legal problems "based on a pushing and shoving incident with his father-in-law," and was sent to Millcreek Community Hospital. F. 155, 303. Dr. Ulus lists Bailey's symptoms as "anger, impulsivity, paranoia, depression, anxiety, and 'sleep disorder'." Dr. Ulus finds that these symptoms "decrease the potential of dealing with stress he

has in his daily life, [and] in the work setting as well." R. 548-49. Dr. Ulus finds that Bailey cannot maintain substantial gainful employment and his prognosis is "poor." R. 549. If the ALJ is to discount this evidence, he must state a reason for doing so.

Moreover, if the ALJ considered Bailey's statements "concerning the intensity, persistence and limiting effects" of his symptoms not credible and contradictory evidence for which the ALJ is discounting the opinions, he must specify this. The ALJ may not simply rely on his own credibility judgments. The ALJ's interpretation of the mental status reports drawn by Dr. Ulus and Dr. Francis to override their report of Bailey's symptoms, when Dr. Francis' expert opinion judges Bailey's statements to be a "representative sample," are the type of "credibility judgments" that are not permitted by law. Plummer v. Apfel, 186 F.3d at 429; R. 406.

As such, this case should be remanded for further consideration.

**III      CONCLUSION**

For the foregoing reasons, it is recommended that the Motion for Summary Judgment by the Plaintiff [Document 10] be granted. It is further recommended that the Motion for Summary Judgment filed by the Defendant [Document 12] be denied. This matter should be further remanded to the Social Security Administration for further proceedings.

In accordance with the Magistrates Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/ Susan Paradise Baxter  
SUSAN PARADISE BAXTER  
Chief United States Magistrate Judge

Dated: June 26, 2008